(Superior Court of Cincinnati.)
Special Term.

## GOBRECHT AND COLE v. McDONALD et al.

G. and C. petitioned for a receiver for the firm of G., McD. & C., alleging that by the withdrawal of McD. from the firm six months before, its resources had been seriously crippled, "rendering it at this time unable to meet its obligations due and about to become due." An intervenor who had sold goods to the firm twenty days before the filing of the petition for a receiver now litigates for the proceeds from said goods.

Held: That the firm had no reasonable expectation when the goods were purchased of being able to pay for them, which was equivalent to an intention not to pay for them, and the intervenor is entitled to the proceeds.

---

Heard on the intervening petition of the Steele-Wedels Company.

DEMPSEY, J.

The plaintiffs and the defendant, McDonald, constituted the firm of Gobrecht, McDonald & Cole, whose property and assets were by this court placed in the hands of a receiver on January 4, 1898. About December 15, 1897, the intervenor, the Steele-Wedels Company, sold and delivered to said firm a bill of goods. After the appointment of the receiver the intervenor applied for leave to sue the receiver for said goods in replevin, on the ground that the same had been fraudulently obtained from it and with intent not to pay for them. In lieu of the replevin action, this court allowed said company to intervene herein and litigate for the proceeds of sale of said goods when sold by the receiver. Said goods have been sold and the intervenor now claims the proceeds. The Second National Bank, a party defendant, also claims the proceeds under a chattel mortgage, duly executed and delivered to it and filed, covering said goods, the said mortgage, however, being given to secure a precedent debt owing to said bank.

The evidence in the case, outside of the pleadings and filings, was solely from Mr. Gobrecht. He testified that the firm was in business about two years; that they started with a capital of about $13,000; that the firm had dealt with in-

tervenor from its start in business; that their purchases were all along bought on the usual credit of from thirty to sixty days; that the firm had a continuing credit with intervenor; that the order for the goods in controversy was solicited by intervenor's agent at the firm's store in his usual way of getting orders; that Mr. Gobrecht gave the order himself; that no questions were asked him about the solvency of the firm; that when he placed the order Mr. Gobrecht believed the firm was solvent—at least, he didn't know it was insolvent; that he purchased the goods on the usual time credit, and that he expected and intended that the firm should pay for them at the maturity of the bill; that the firm had on hand a stock of goods which cost them $11,000, and that there were book accounts owing to them in the amount of $4,000; that McDonald had the management of the office, while he, Gobrecht, was the outside traveling man; that dissensions had arisen between McD. and the other members of the firm, through which they were compelled to buy McD. out, and that then he discovered when forced to buy McD. out that the firm was insolvent; that at the time of the receivership their indebtedness was $24,100. The original contributions of capital were: G., $10,000; McD., $1,800, and Cole, $1,000. The foregoing is about the substance of all of the oral evidence offered.

Standing on this evidence alone and following as closely as I could the reasoning of the opinion in the case of Talcott v. Henderson, 31 Ohio St., 162, my inclination was that a case of wilful intention not to pay had not been made out, and, hence, that intervenor had not parted with its goods through fraud on the part of the firm. Mr. G. was perfectly open and frank on the witness stand, and I am confident perfectly honest in his statements. There are some obscurities in his testimony that required a reference to the pleadings to clear up. For instance, he testified to dissensions with McD. and to the necessity of buying him out, but he did not state, possibly because not asked, how much it required to buy him out. But he does state that when forced to buy McD. out, he, G. then discovered the firm to be. insolvent, but he does not state at what date that was.

Now, if we refer to the petition, which is signed and sworn to by both G. and C., and which is not denied by any of the parties to the case—thus presenting a clear instance of an admission of record —we find it averred that since "July 6, 1897, he (McD.) abandoned all active participation in the conduct of said business and went elsewhere * * * but retaining his connection with said partnership. Also, since the date last named (i. e. July 6, 1897), he has withdrawn from the said firm an amount equal to his capital in the firm, the effect of which has been to seriously cripple the resources of the firm and to render it at this time unable to meet its obligations due and about to become due." This averment necessarily shows that all of the members of the firm from July 6, 1897, to January 4, 1898, thus overlapping the date of intervenor's sale, were cognizant that the firm was being crippled by the withdrawal of Mr. McD.'s capital, and was being incapacitated from meeting its maturing obligations.

Now, it is not a forced deduction at all to say that if they were not able to meet maturing indebtedness, they would not be able to meet any new indebtedness, and that they knew that fact. There were only twenty days elapsing from intervenor's sale to the filing of the receivership petition, and it is not at all probable, in view of the allegations of the petition, that all of the trouble, and the firm's knowledge of it, culminated within those twenty days. The more reasonable view is, that the firm knew of their impending disaster all along from July 6, 1897. Hence, it seems to me, that the deduction is a fair one that at the time Gobrecht ordered the goods in controversy from intervenor's agent the firm had "no reasonable expectation of being able to pay for them;" that, under Talcott v. Henderson, is equivalent to an intention not to pay. As a consequence, the intervenor would have been entitled to a return of the specific goods; they having been converted by the receiver herein, he is entitled to their proceeds; and an order is allowed to that effect.

Jacob Shroder, for the Intervenor.

Campbell, Bates, ClenDening & Meyer, for the Second National Bank.

---

(Superior Court of Cincinnati.)
Special Term.
WM. GOODALL v. CITY.